**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Thomas J. Just, on behalf of himself
and all others similarly situated,

        Plaintiff,

v.

Target Corporation,

        Defendant.

Civil No. 15-4117 (DWF/TNL)

**MEMORANDUM**
**OPINION AND ORDER**

_____

Cassie C. Navarro, Esq., Patricia A. Bloodgood, Esq., Shawn J. Wanta, Esq., Baillon Thome Jozwiak & Wanta LLP, counsel for Plaintiff.

Donald M. Lewis, Esq., Katie M. Connolly, Esq., and Sarah B. C. Riskin, Esq., Nilan Johnson Lewis PA, counsel for Defendant.

_____

**INTRODUCTION**

Plaintiff Thomas J. Just filed this putative class action against Defendant Target Corporation ("Target") after Just applied for a job at Target and received a document entitled "Consent & Disclosure," which informed him that Target intended to request a background check as part of the hiring process. Under the Fair Credit Reporting Act ("FCRA"), if an employer intends to obtain a report about a job applicant, the employer must notify the applicant. Such notification must be in a separate document without any extraneous information. Just alleges that Target included impermissible extraneous information in the Consent & Disclosure and in so doing, willfully violated the FCRA.

Presently, the Court considers Target's motion to dismiss under Rule 12(b)(6). Even if the Court assumes, for the sake of argument, that Target violated the FCRA, it cannot conclude that Just plausibly alleges that such violation was willful. Given the lack of guidance from the federal courts of appeals and the Federal Trade Commission ("FTC"), as well as the divergent views of the federal district courts on the meaning of the statute, the Court cannot conclude that Target's reading of the statute was objectively unreasonable. Accordingly, the Court grants Target's motion.

## BACKGROUND

In 2014 and 2015, Just applied for a full-time job at Target. (Doc. No. 1 ("Compl.") ¶ 11.) Just completed an online job application that included a one-page document entitled "Consent & Disclosure," which stated, among other things, Target's intent to procure a background check about Just:

> As part of our hiring process, we will request a consumer and/or investigative consumer report about you, which may include: a background investigation, consistent with applicable federal, state and local laws, that includes obtaining information on convictions and/or pending prosecutions, as well as Department of Motor Vehicles information, educational background, employment history and any other factors that may be relevant to your qualifications to work at our Company.

(*Id.* ¶ 12; Ex. A to Compl. ("Consent & Disclosure").) In addition, the Consent & Disclosure provided that Just's signature on the document authorized Target to procure the background check, stating in part:

> **If extended an offer, you agree to the following by signing this form:**
>
> - Authorizing our Company to request and get a consumer report and/or Investigative consumer report about you from First Advantage . . .
>
> You hereby consent to this investigation and authorize our Company to procure consumer reports and/or investigative consumer reports on your background.

(Consent & Disclosure (emphasis in original).) Just signed the Consent & Disclosure, and Target procured a background check. (*Id.*; Compl. ¶ 17.) The background check revealed that Just had criminal convictions, and Target withdrew a job offer it had extended to Just. (Compl. ¶ 17.)

Just does not complain about the withdrawn job offer. Rather, the essence of his lawsuit is that Target included impermissible, extraneous information in the Consent & Disclosure. He specifically highlights three provisions of the document. First, the Consent & Disclosure opens with two sentences that Just claims are likely to mislead a job applicant: "Teamwork requires dedication, trust, and above all, honesty. It is a commitment we ask of all our team members and potential team members." (Consent & Disclosure; Compl. ¶ 14.) Second, the Consent & Disclosure states: "You understand if you disagree with the accuracy of any information in the report, you must notify First Advantage within five business days of your receipt of the report." (Consent & Disclosure.) Just claims that this sentence purports to impose an improper obligation on a job applicant. (Compl. ¶ 15.) Third, the Consent & Disclosure provides: "**Please Note:** *You are NOT creating a 'contract of employment' with our Company by signing this form. If hired, both you and our Company have the right to end your employment at*

3

*anytime for any reason.*" (Consent & Disclosure (emphasis in original).) Just alleges that this language is misleading because it suggests that Target can terminate an employee based on discrimination or retaliation. (Compl. ¶ 16.)

In his brief, Just also stresses the fact that the Consent & Disclosure contains the following state-specific information:

> **In MN or OK**, if you would like a copy of the consumer report to be mailed directly to you, check this box ☐.
>
> **In any state other than MN or OK**, First Advantage will give you a complete and accurate disclosure of the nature and scope of this report, upon your written request.

(Consent & Disclosure.) Target, on the other hand, points out that the Consent & Disclosure does not contain a release provision waiving the liability of Target or First Advantage in connection with the background check. (*See id.*)

Just's single-count Complaint claims that Just (and the alleged class members) are entitled to statutory damages based on Target's willful violation of the FCRA's stand-alone disclosure requirement, 15 U.S.C. § 1681b(b)(2)(A)(i), pursuant to the FCRA's civil liability provision, 15 U.S.C. § 1681n. (Compl. ¶¶ 25-27.) Just supports his claim of willfulness by alleging the following: (1) Target's conduct is inconsistent with "longstanding regulatory guidance, judicial interpretation, and the plain language of the statute"; (2) Target "routinely" included extraneous information in its disclosure forms; and (3) Target "knowingly benefited" from imposing unrelated and unfavorable conditions on job applicants in the Consent & Disclosure. (*Id.* ¶ 26.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).[1]

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

---

[1] Here, the Consent & Disclosure is attached to, and embraced by, the Complaint.

## II.     The FCRA's Stand-alone Disclosure Requirement

Just claims that Target's Consent & Disclosure violated 15 U.S.C. § 1681b(b)(2)(A)(i), the so-called "standalone disclosure requirement" of the FCRA. The FCRA states, in relevant part:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added). Essentially, Just claims that Target's Consent & Disclosure was not "a document that consist[ed] solely of the disclosure." *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

Multiple federal district courts have considered the meaning of the stand-alone disclosure requirement. A judge in this District recently explained that "solely" means that an employer must "provide notice consisting 'only' of the disclosure, 'to the exclusion of all else.'" *Shoots v. iQor Holdings US Inc.*, Civ. No. 15-563, 2016 WL 1733437, at *3 (D. Minn. Apr. 29, 2016); *see also, e.g.*, *Robrinzine v. Big Lots Stores, Inc.*, --- F. Supp. 3d ----, Civ. No. 15-7239, 2016 WL 212957, at *5 (N.D. Ill. Jan. 19, 2016); *Martin v. Fair Collections & Outsourcing, Inc.*, Civ. No. 14-3191, 2015 WL 4064970, at *3-4 (D. Md. June 30, 2015). Other courts have concluded that the

stand-alone disclosure requirement prohibits "extraneous" information. *E.g., Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 332-33 (S.D.N.Y. 2015); *Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 433 (E.D. Va. 2015); *see also* Staff Opinion Letter to Coffey, 1998 WL 34323748, at *2 (F.T.C. Feb. 11, 1998) ("It is our view that Congress intended that the disclosure not be encumbered with extraneous information.").

In addition, district courts have regularly held that including a liability waiver in a disclosure form violates the stand-alone disclosure requirement. *E.g., Schoebel v. Am. Integrity Ins. Co. of Fla.*, Civ. No. 15-380, 2015 WL 3407895, at *6 (M.D. Fla. May 27, 2015); *Singleton v. Domino's Pizza, LLC*, Civ. No. 11-1823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012). Likewise, the FTC, in a non-binding advisory opinion, has expressed the view that the FCRA does not permit employers to include liability waivers in disclosure documents. Staff Opinion Letter to Hauxwell, 1998 WL 34323756, at *1 (F.T.C. June 12, 1998). Still, at least one court has disagreed. *Smith v. Waverly Partners, LLC*, Civ. No. 10-28, 2012 WL 3645324, at *6 (W.D.N.C. Aug. 23, 2012) (concluding that liability waiver was statutorily impermissible and invalid, but disclosure and authorization were otherwise "adequate"); *see also Schoebel*, 2015 WL 3407895, at *6 (recognizing split of authority).

At the same time, there are some exceptions to the rule that the disclosure document must not include anything but the disclosure. First, the statute itself provides an exception; namely, clause (ii) provides that an employer may include an authorization in the same document that provides the disclosure that clause (i) requires. 15 U.S.C.

7

§ 1681b(b)(2)(A)(ii); *see also Syed v. M-I LLC*, Civ. No. 14-742, 2014 WL 5426862, at *3 (E.D. Cal. Oct. 23, 2014); Staff Opinion Letter to Hawkey, 1997 WL 33791224, at *1 n.3 (F.T.C. Dec. 18, 1997); Staff Opinion Letter to Steer, 1997 WL 33791227, at *2 (F.T.C. Oct. 21, 1997). Second, two non-binding advisory opinions by the FTC suggest that limited information beyond the disclosure and authorization may be included in the disclosure document, including, for example, a brief description of the nature of the reports covered by the disclosure and authorization and a statement of the job applicant's right to request information about the nature and scope of the reports. Staff Opinion Letter to Willner, 1999 WL 33932153, at *2 (F.T.C. Mar. 25, 1999); Staff Opinion Letter to Coffey, 1998 WL 34323748, at *2; *see also Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 699 (S.D. Ohio 2010) (explaining that "[i]ncluding the explanatory language alongside the disclosure language is logical," even considering the statute's use of the word "solely").

Here, Target's Consent & Disclosure plainly includes more than a statement that a consumer report may be obtained for employment purposes and an authorization permitting procurement of that report. It does not, however, contain a liability waiver or release. And, Target argues, the information challenged by Just is "part and parcel of providing a full disclosure and securing a meaningful authorization"; it is not extraneous information intended to benefit Target at the expense of job applicants. (Doc. No. 15 at 13-17.) The Court, however, need not decide whether Just plausibly states a claim that Target violated the stand-alone disclosure requirement under the FCRA, because Just must also plausibly allege that any violation by Target was committed willfully.

8

**III.     The FCRA's Willfulness Requirement**

Crucially, Just claims that Target's violation of the FCRA's stand-alone disclosure requirement was not merely negligent but willful.  Under the FCRA, statutory damages (rather than actual damages) are only available when a defendant's conduct is willful: "Any person who *willfully fails to comply* with any requirement imposed" is liable for statutory damages of $100 to $1,000.  15 U.S.C. § 1681n(a)(1)(A) (emphasis added).  Because Just does not claim actual damages, he must allege willfulness in order to maintain his lawsuit.

In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57 (2007), the Supreme Court construed "willfully" in § 1681n(a) as encompassing both knowing and reckless violations of the FCRA.  In explaining the term "reckless," the Court stated that a company's action is not reckless "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Safeco*, 551 U.S. at 69.  Thus, under *Safeco*, Just must plausibly allege that Target acted pursuant to a reading of the FCRA's stand-alone disclosure requirement that was—at minimum—objectively unreasonable.  *See id.*; *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 501 (8th Cir. 2014) (explaining *Safeco*'s standard for "willfulness" and stating, "[i]n essence, the central inquiry focuses on 'objective reasonableness'").

To determine whether a reading is objectively unreasonable, the *Safeco* Court identified three sources of potential guidance for an alleged willful violator:  (1) the federal courts of appeals; (2) the FTC; and (3) the statutory text.  *Safeco*, 551 U.S.

at 69-70; *see also Hammer*, 754 F.3d at 502.  In *Safeco*, where the federal courts of appeals had not spoken on the disputed issue, the FTC had issued only an informal opinion, and the statutory text was less than clear, the Court found that the defendant's reading of the statute "was not objectively unreasonable, and so [fell] well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability."  *Safeco*, 551 U.S. at 70.

The *Safeco* Court also clarified that subjective bad faith is irrelevant to the willfulness inquiry, even if the plaintiff alleges a knowing (rather than reckless) violation. The Court stated:

> To the extent that [the plaintiffs] argue that evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively reasonable, their argument is unsound.  *Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.*  Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.

*Id.* at 70 n.20 (emphasis added).  Thus, under *Safeco*, Just cannot establish willfulness by asserting that Target *knew* its Consent & Disclosure violated the statute, unless Target's interpretation of the statute was also objectively unreasonable.  *See id.*; *Hammer*, 754 F.3d at 502; *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012); *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009); *Lengel v. HomeAdvisor, Inc.*, 102 F. Supp. 3d 1202, 1209 (D. Kan. 2015).  *But see Shoots*, 2016 WL 1733437, at *4 (finding that plaintiff sufficiently alleged willfulness, by alleging defendant knowingly violated FCRA, without determining whether defendant's

interpretation of FCRA was objectively unreasonable); *Robrinzine*, 2016 WL 212957, at *7 (same).

Here, the sources of potential guidance identified in *Safeco* do not make Target's interpretation of the stand-alone disclosure requirement objectively unreasonable. First, the federal courts of appeals have provided no guidance as to the parameters of the stand-alone disclosure requirement. Second, the FTC has issued only informal advisory opinions, and those advisory opinions have identified only one type of provision as specifically prohibited from inclusion in the disclosure document—liability waivers, which the Consent & Disclosure did not include. *See* Staff Opinion Letter to Hauxwell, 1998 WL 34323756, at *1.

Third, the text of the statute itself is less than clear. The words "solely" and "disclosure" may appear unambiguous, and some courts have found that the language of the stand-alone disclosure requirement does not permit more than one interpretation. *See, e.g.*, *Groshek v. Time Warner Cable, Inc.*, Civ. No. 15-157, 2015 WL 4620013, at *2 (E.D. Wisc. July 31, 2015); *Reardon v. ClosetMaid Corp.*, Civ. No. 08-1730, 2013 WL 6231606, at *10 (W.D. Pa. Dec. 2, 2013). At the same time, however, the meaning of "solely" is not entirely certain, particularly in light of the FTC's view that the disclosure document can include, in addition to the disclosure and authorization, a description of the background check the employer intends to procure and a statement of the job applicant's right to request information about the check. *See* Staff Opinion Letter to Willner, 1999 WL 33932153, at *2; Staff Opinion Letter to Coffey, 1998 WL 34323748, at *2. Likewise, "disclosure" "is not defined in every possible aspect,"

11

and "there may be some gray area" about what constitutes a disclosure. *Lengel*, at 102 F. Supp. 3d at 1211.  Indeed, multiple district courts have determined that the statutory text is ambiguous.  *E.g., Schoebel*, 2015 WL 3407895, at *8; *Syed*, 2014 WL 5426862, at *3.

Therefore, because the federal courts of appeal, the FTC, and the statutory text provide insufficient guidance about the meaning of the FCRA's stand-alone disclosure requirement, Target's reading of the requirement is not objectively unreasonable.  Accordingly, if Target violated the FCRA's stand-alone disclosure requirement, such violation was not willful. *See, e.g.*, *Schoebel*, 2015 WL 3407895, at *9-10 (holding, as a matter of law, that defendant's FCRA violation was not willful, because it was not based on objectively unreasonable interpretation of statute); *Goldberg v. Uber Techs., Inc.*, Civ. No. 14-14264, 2015 WL 1530875, at *2 (D. Mass. Apr. 6, 2015) (same); *Syed*, 2014 WL 5426862, at *4 (same).  Finally, because the Court concludes, as a matter of law, that Target did not act willfully under the *Safeco* standard, any proposed amendment of the Complaint would be futile, and dismissal with prejudice is appropriate. *See Syed*, 2014 WL 5426862, at *4.

## CONCLUSION

Given the dearth of guidance from the federal courts of appeal and the FTC, as well as the less-than-clear text of the FCRA's stand-alone disclosure requirement, the Court concludes, as a matter of law, that Target did not willfully fail to comply with the FCRA.  Accordingly, the Court grants Target's motion to dismiss this lawsuit with prejudice.

**ORDER**

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendant Target Corporation's Motion to Dismiss Plaintiff's Complaint (Doc. No. [5]) is **GRANTED.**

2. Plaintiff Thomas J. Just's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 12, 2016                                s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge